# United States District Court
## for the
### Western District of New York

| | |
|---|---|
| United States of America<br>v.<br>**OLESIA SUMINA**<br>*Defendant* | Case No. 24-mj-1195 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of October 9, 2024, in the County of Erie, in the Western District of New York, the defendant **OLESIA SUMINA** did assault, resist, impede or interfere with individual designated in section 1114 of Title 18, while engaged in or on account of the performance of official duties, and such acts involved physical contact and bodily injury with the victim of that assault, in violation of **Title 18, United States Code, Section 111(a)(1)**.

This Criminal Complaint is based on these facts:

☒   Continued on the attached sheet.

*Complainant's signature*

CHARLES S. TOLIAS
SPECIAL AGENT
HOMELAND SECURITY INVESTIGATIONS
*Printed name and title*

Sworn to before me and signed telephonically.

Date:  October 10, 2024

*Judge's signature*

City and State:  Buffalo, New York

HONORABLE JEREMIAH J. McCARTHY
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

STATE OF NEW YORK )
COUNTY OF ERIE      )  SS:
CITY OF BUFFALO    )

I, **CHARLES S. TOLIAS**, having been first duly sworn, do hereby depose and state as follows:

1. I am employed as a Special Agent with the U.S. Department of Homeland Security, Homeland Security Investigations (HSI), and have been employed in that capacity since December 2008. I am currently assigned to HSI, Buffalo, New York. Before that time, I was employed as a Customs and Border Protection Enforcement Officer for approximately six years. As a Special Agent, I am a federal law enforcement officer within the meaning of Rule 41(a) of the Federal Rules of Criminal Procedure, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses in violation of the United States Code.

2. This affidavit is submitted in support of an application for a criminal complaint charging Olesia SUMINA (DOB: 10/30/19XX) with violation of Title 18, United States Code, Section 111(a)(1) by intentionally and forcibly assault, resist, impede, and interfere with VICTIM 1, a United States Customs and Border Protection Officer (CBPO), while VICTIM 1 was engaged in, and on account of the performance of, her official duties.

3. The information contained in this affidavit is based on my personal knowledge and observations during the course of this investigation; and on information conveyed to me by other law enforcement officers, either personally or through their reports. Because this affidavit is being submitted for the limited purpose of obtaining a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that SUMINA did knowingly violate Title 18, United States Code, Section 111(a)(1).

4. On October 9, 2024, at approximately 11:20 p.m. your affiant received a call from CBP at the Peace Bridge Port of Entry (POE) located in Buffalo, New York. CBP advised your affiant that a CBP Officer had been assaulted by SUMINA. On the same date, your affiant responded to the Peace Bridge POE to investigate.

5. Upon arrival to the Peace Bridge POE you affiant was advised that SUMINA had been returned to the United States by Canada Border Services Agency (CBSA). SUMINA had traveled to Canada that same day with her two children to file an asylum claim in Canada. The claim was refused by CBSA resulting in SUMINA being driven by CBSA to the Peace Bridge POE. CBSA Officers informed CBP that SUMINA became difficult to deal with during transport to the Peace Bridge POE and stated that SUMINA had spit inside their vehicle.

6. Upon arrival to the Peace Bridge POE, an interview of SUMINA was attempted by CBP utilizing a language translation application but was unsuccessful. CBP

officers attempted to interview SUMINA but she was uncooperative throughout the interview and was also reluctant to provide her personal information.

7. On October 9, 2024, CBPO Sheryl Hollwedel provided a sworn statement to your affiant in which she stated that she and VICTIM 1 were questioning SUMINA at a counter located at the Peace Bridge POE about gaining access to her cellular phone. CBPO Hollwedel stated that the cellular phone was turned toward SUMINA so that SUMINA could show the officers what the passcode was so that a basic border search could be conducted on the device. When the cellular phone was presented in front of SUMINA she grabbed it, quickly put it in her pocket, and said "No. My phone."

8. CBPO Hollwedel and VICTIM 1 proceeded to enter the secondary area where SUMINA was located to attempt to retrieve the cellular phone. CBPO Hollwedel informed SUMINA that she could not keep the phone and that it needed to be returned to the CBP Officers. SUMINA responded by putting her hands in her pocket and said "no." CBPO Hollwedel attempted to have SUMINA's son explain to SUMINA, in Russian, that she had to give the phone back. CBPO Hollwedel stated that when SUMINA did not comply, she instructed SUMINA to remove her hands from her pockets. CBPO Hollwedel then reached for SUMINA's arm to stand her up. CBPO Hollwedel stated that when she made contact with SUMINA that she quickly pulled her arm away, stood up, and became non-compliant. SUMINA proceeded to grab CBPO Hollwedel's abdomen and grabbed a hold of her sweater and began to twist and pull it toward SUMINA, while at the same time grabbing VICTIM 1 by the shoulder while also pulling on her shirt. Additional CBP officers subsequently entered

the room to assist CBPOs Hollwedel and VICTIM 1.  SUMINA continued to struggle with officers and refused to put her hands behind her back as instructed.  SUMINA eventually calmed down and sat on a bench in the secondary area.  CBPO Hollwedel stated that SUMINA had dug her fingernails into VICTIM 1's wrists during the altercation.

9. On October 9, 2024, CBPO Daniel Gordon provided a sworn statement to your affiant in which he stated that CBPOs Hollwedel and VICTIM 1 attempted to retrieve a cellular phone from SUMINA in a waiting room located at the Peace Bridge POE.  CBPO Gordon stated that SUMINA refused to provide her cellular phone, as instructed, and that she became physical with the CBPOs by grabbing CBPO Hollwedel's shirt and scratching VICTIM 1's arms.

10. On October 10, 2024, VICTIM 1 provided a sworn statement to your affiant in which she stated that during her official duties, she encountered SUMINA in the secondary inspection area at the Peace Bridge POE.  VICTIM 1 stated that SUMINA had been asked to provide the password to access her cellular phone, at which point she took the cellular phone from CBPO Hollwedel's possession.  VICTIM 1 stated that she and CBPO Hollwedel approached SUMINA for her cellular phone at which point SUMINA quickly became aggressive towards them.  VICTIM 1 stated that as they attempted to render control, SUMINA grabbed their shirts and scratched and dug into VICTIM 1's wrists and left hand.  Following the altercation, medical aid was administered to VICTIM 1's wounds from the altercation by a colleague before she was transported to the hospital for further treatment.

4

11.      On October 10, 2024, CBPO Jason Chudoba provided a sworn statement to your affiant in which he stated that SUMINA had been asked to provide the password for her cellular phone for further examination. CBPO Chudoba stated that SUMINA grasped her phone and walked away from the CBP officers securing her phone in a jacket pocket. SUMINA was then asked by CBPOs Hollwedel and VICTIM 1 to return the cellular phone which she declined to do. CBPO Chudoba stated that when CBP Officers attempted to gain control of SUMINA's cellular phone that she forcefully refused by clinching her pocket and backing away. CBPO Chudoba stated that as CBPO Hollwedel reached for SUMINA's jacket pocket where the phone was secured that she grabbed a hold of CBPO Hollwedel's shirt and tore it. CBPO Hollwedel stated that as SUMINA was being secured by CBP officers that VICTIM 1 indicated that she was being scratched by SUMINA. CBPO Chudoba stated that after SUMINA's cellular phone was secured that SUMINA appeared physically upset and had to be blocked by CBPO Chudoba and another CBPO as SUMINA started aggressively approaching the officers who had possession of her cellular phone. CBPO Chudoba stated that he instructed SAMINA to calm down, to which she did.

12.      On October 10, 2024, your affiant was able to observe the wounds left on each of VICTIM 1's wrists and her left hand.

## CONCLUSION

13.      Based on all of the foregoing facts, I submit that there is probable cause to believe that SUMINA knowingly violated Title 18, United States Code, Section 111(a)(1) by intentionally and forcibly assault, resist, impede, and interfere with VICTIM 1, a United

States Customs and Border Protection Officer, while VICTIM 1 was engaged in, and on account of the performance of, her official duties.

_Charles S. Tolias_
CHARLES S. TOLIAS
Special Agent
Homeland Security Investigations

Sworn to before me and signed telephonically
on this 10th day of October, 2024.

_____
HONORABLE JEREMIAH J. MCCARTHY
United States Magistrate Judge